No. 75,723

In the Matter of MICHAEL G. MORONEY, *Respondent*.
(914 P.2d 570)

On August 11, 1995, a Notice of Formal Proceedings was filed with the Commission on Judicial Qualifications (Commission), under Rule 611(b) (1995 Kan. Ct. R. Annot. 427) against Michael G. Moroney, Judge of the District Court of Wyandotte County, the 29th Judicial District (Respondent). See Code of Judicial Conduct, Rule 601 (1995 Kan. Ct. R. Annot. 379).

At a November 30, 1995, hearing, the Commission accepted stipulations and heard evidence. Edward G. Collister, Jr., Examiner, of Lawrence, appeared in support of the Notice of Formal Proceedings. Respondent appeared personally and through counsel, Michael A. Barbara, of Wichita.

The Commission unanimously made the following findings of fact, concluding that the findings were established by clear and convincing evidence and established violations of Canons 1 (1995 Kan. Ct. R. Annot. 379), 2 (1995 Kan. Ct. R. Annot. 380), and 3A(3) (1995 Kan. Ct. R. Annot. 382) of the Code of Judicial Conduct.

The findings of fact were included in a stipulation entered into by Respondent, through his counsel, before the hearing.

"COUNT I

"1. On September 16, 1994, a series of incidents occurred at DL's Club in Kansas City, Kansas, involving Respondent.

"2. On that evening, Respondent arrived at DL's Club with a female companion. After the Respondent ordered drinks, the bartender informed Respondent that she would not serve him another drink because he had had enough to drink. Respondent replied angrily, picked up a glass, and threw it at the bartender or in the bartender's direction. The glass struck a small island in the center of the bar area and shattered. Respondent then picked up a bottle and threw it toward the bartender.

"3. Later at the bar Respondent bumped into a Walter Adams. Mr. Adams fell to the floor. Respondent then went to the parking lot where he obtained a firearm

from his car. Respondent later reported to an investigator that he had been told Adams' friends might not let the incident drop so he obtained the gun.

"4. Subsequently, a tow truck driver was preparing to tow Respondent's car and take Respondent wherever he wished to be taken. Respondent commented, 'I'm not going with that son-of-a-bitch' and then with the assistance of another bystander was driven to an apartment complex in Smithville with his companion. On the way, Respondent became argumentative on learning that this bystander's father was an attorney. Respondent then commented he was going to kill the bystander, his family, and his father with his thumbs.

"5. Respondent was intoxicated during the incidents at DL's Club on September 16, 1994, and while intoxicated was in possession of a firearm outside the club.

"6. In October 1993, Respondent was involved in another physical confrontation with an individual at the Golden Ox Restaurant. A woman who was with Respondent went to the restaurant bar to talk to two men sitting at the bar, one of whom she knew. The man asked Respondent if he wanted a drink and received no response. Respondent grabbed the man, knocking him to the floor.

"COUNT II

"7. A litigant named Baljit Hundal appeared pro se in Respondent's court on several occasions in Case No. 93 L 2029. On March 24, 1993, Mr. Hundal appeared in court pro se. Respondent ridiculed Mr. Hundal about Mr. Hundal's inability to speak English fluently. Respondent kept insisting that Mr. Hundal needed an attorney; Mr. Hundal maintained that he wished to represent himself. Respondent told Mr. Hundal to leave the courtroom, which he did, and the case was dismissed for lack of prosecution on July 21, 1993.

"8. Respondent had a practice of dismissing limited civil cases if, at a docket call the attorneys did not appear when their cases were called, even though they were in another division of the court. On one occasion, attorney David Clark left a motion to reinstate a case so dismissed with Respondent's secretary, requesting that Respondent sign the order. Mr. Clark subsequently received a telephone call from Respondent, who angrily asked, 'Who the hell do you think you are?' The motion was denied.

"9. In a case involving Boatmen's Bank and Simone Fuentes, Case No. 92 L 3537, the plaintiff was represented by a Missouri attorney. A request was made to set aside a default judgment in a case in which garnishments had issued following judgment. Plaintiff had brought witnesses to court, including a process server and two bank officers on the issue of service. When the issue was announced at the call of the docket, Judge Moroney replied he would give Mr. Schultz his hearing but he was going to set aside the judgment anyway. He also indicated that he felt it was a waste of the court's time to hear any evidence on this matter. Then a default judgment was entered against plaintiff on a counterclaim because a reply had not been filed until that morning prior to court, even though a pro tem Judge had given permission for it to be filed. After plaintiff's counsel reported

what the pro tem Judge had said, Respondent commented, 'When you come across the river, better play by our rules.' Respondent indicated he did not care whether defense counsel had an objection, he was going to enter a default judgment against plaintiff on the counterclaim.

### "COUNT III

"10. Two attorneys, Aline Pryor and David Epstein, were involved in litigation in Case No. 93 D 4291, a divorce action filed September 20, 1993, and assigned to Respondent. Both attorneys contacted Respondent's Administrative Assistant and obtained a hearing date of November 3, 1993, at 10:45 a.m.

"11. The attorneys appeared on the day in question together with their clients and members of their clients' families. The attorneys told the Administrative Assistant that they were there for trial. The Administrative Assistant acknowledged the scheduled hearing. Respondent was just leaving the bench and entering his office. The attorneys approached Respondent and advised that they were there for the trial and requested a short conference prior to the Court taking the bench.

"12. Respondent first pointed to one of the attorneys, Mr. Epstein, and shouted, 'Who is that?' The other attorney responded by identifying the attorney and indicating that he represented the wife. Respondent was informed that this attorney offices in Johnson County. Respondent demanded to know why they were there. The attorneys responded that they were present for the 10:45 a.m. trial. In response to that statement, Respondent yelled, 'You are not having a trial today! I am leaving for lunch now and I will not be late!' Respondent told the attorneys the case was not on his calendar and started yelling at them that he was sick of attorneys being irresponsible and setting cases on the wrong days. The attorneys explained they had called to schedule the case several times and were assured it was this date and were assured there would be at least 45 minutes to be heard. Respondent replied, 'It's not on my calendar and I won't hear this today!' Respondent continued to deny that the attorneys had called and scheduled a trial for that date.

"13. When the attorneys persisted, Respondent shouted that his schedule was very busy and that no one understood this. He again referred to his lunch plans and reiterated that he was unaware of this hearing.

"14. Respondent pounded his fist on the desk and became quite agitated. Respondent was asked if he could at least grant the parties an emergency divorce. He screamed a response that he did not have time to do it, but he would grant the divorce to get rid of them. Respondent grabbed the docket sheet, slammed the judgment stamp onto the page, and began filling it out. One attorney asked if Respondent wanted to put the clients on the stand or have them come in his office to attest to the need for the emergency divorce. He screamed again that he did not have time for that and, if they wanted a divorce, this was how it would be done."

The Commission entered the following conclusions of law:

## "COUNT I

"1. The notice of Formal Proceedings alleges that Respondent's conduct in Count I violated the provisions of Canon 1 and Canon 2 of Rule 601 of the Rules of the Supreme Court Relating to Judicial Conduct.

"2. Canon 1 provides, inter alia:
A judge should uphold the integrity
and independence of the judiciary..
A judge should participate in establishing,
maintaining, and enforcing, and should himself
observe, high standards of conduct so that the integrity . . .
of the judiciary may be preserved.

"3. Canon 2 provides, inter alia:
A Judge should avoid impropriety and the appearance
of impropriety in all his activities.

"4. The Commission unanimously finds that Respondent's conduct, established by clear and convincing evidence, violated Canon 1 and Canon 2 as cited above.

## "COUNT II

"5. The Notice of Formal Proceedings alleges that Respondent's conduct in Count II violated the provisions of Canon 1, Canon 2, and Canon 3A(3) of Rule 601 of the Rules of the Supreme Court Relating to Judicial Conduct.

"6. Canon 1 provides, inter alia:
A judge should uphold the integrity
and independence of the judiciary.
A judge should participate in establishing,
maintaining, and enforcing, and should himself
observe, high standards of conduct so that the integrity . . .
of the judiciary may be preserved.

"7. Canon 2 provides, inter alia:
A judge should avoid impropriety and the
appearance of impropriety in all his activities.

"8. Canon 3A(3) provides, inter alia:
A Judge should perform the duties of his office
impartially and diligently.
A. Adjudicative Responsibilities.
. . . .

(3) A judge should be patient, dignified, and courteous
to litigants, jurors, witnesses, lawyers, and others with
whom he deals in his official capacity . . . .

"9. The Commission unanimously finds that Respondent's conduct, established by clear and convincing evidence, violated Canon 1, Canon 2, and Canon 3A(3) as cited above.

## "COUNT III

"10. The Notice of Formal Proceedings alleges that Respondent's conduct in Count III violated the provisions of Canon 1, Canon 2, and Canon 3A(3) of Rule 601 of the Rules of the Supreme Court Relating to Judicial Conduct.

"11. Canon 1 provides, inter alia:

A judge should uphold the integrity and independence of the judiciary.

A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity . . . of the judiciary may be preserved.

"12. Canon 2 provides, inter alia:

A Judge should avoid impropriety and the appearance of impropriety in all his activities.

"13. Canon 3A(3) provides, inter alia:

A judge should perform his duties of his office impartially and diligently.

A. Adjudicative Responsibilities.

. . . .

(3) A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity . . . ."

By an affirmative vote of five members, in an order dated January 8, 1996, the Commission recommended under Rule 620 (1995 Kan. Ct. R. Annot. 431) that Respondent be disciplined by removal from the bench.

Three members of the Commission concurred in the findings of fact and conclusions of law but dissented as to the recommendation.

The minority recommendation was: (1) immediate suspension without pay for 2 months, (2) entry into an alcohol treatment program, (3) attendance and completion of any evaluation and/or treatment program recommended by the approved facility, (4) remain involved with the impaired judge's assistance committee established by Rule 640 (1995 Kan. Ct. R. Annot 435), (5) cooperation with that committee, (6) abstain from the use of any and all alcoholic beverages, (7) comply with the Code of Judicial Conduct, (8) be monitored by a person to be selected by the court or the Commission who would report to the court or the Commission, and (9) pay the costs of these proceedings.

The probationary period recommended by the minority was 3 years. If Respondent had complied with the above conditions after a period of 3 years, the minority would recommend that the court vacate its order of removal.

Respondent, on January 26, 1996, took no exceptions to the Commission's findings but did express exceptions to the Commission's failure to:

(1) "find from clear and convincing evidence that Respondent is and was at all times material an impaired judge under Rule 640 of the Rules of the Supreme Court of the State of Kansas Relating to Judicial Conduct";

(2) "find that there was clear and convincing evidence of mitigation in that Respondent successfully completed an appropriate alcohol dependency treatment program"; and

(3) "enter a Conclusion of Law that Respondent was an impaired judge."

Respondent also objected to the recommendation for removal from the bench and requested that the court adopt the minority recommendation except as to suspension of pay for 2 months.

On February 23, 1996 the Commission through its examiner filed a motion for an order of temporary suspension requesting that the court temporarily suspend Respondent from further judicial duties during the pendency of this proceeding.

We issued an order on February 23, 1996 ordering Respondent to appear in person or by counsel on March 8, 1996, at 9 a.m. to show cause as to why he should not be temporarily suspended from the performance of his judicial duties. A briefing schedule had been established on the removal recommendation of the Commission and oral argument was set in this Court for May 31, 1996.

On March 7, 1996, Respondent resigned his position as district judge in the 29th Judicial District.

Under Rule 620, removal from the bench is the maximum discipline that the Commission may recommend. Respondent has voluntarily resigned from office, and under the facts of this case, nothing remains to be determined by this court. The order to show cause and the hearing on removal from the bench are moot.

IT IS THEREFORE ORDERED that these proceedings be and they are hereby terminated at Respondent's costs. The case is removed from the May 1996 docket.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports.